**PIPER ACCEPTANCE CORPORATION,**
Appellee,

v.

**Wilburn Y. YARBROUGH and Sarah Yarbrough, his wife, Appellants.**

No. 82–1899.

United States Court of Appeals,
Eighth Circuit.

Submitted March 22, 1983.

Decided March 28, 1983.

Michael Everett, Lepanto, Ark., for appellants.

Smith & Nixon by Griffin Smith, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

PER CURIAM.

Appellants Wilburn Y. Yarbrough and his wife, Sarah, appeal from the district court's[1] order holding that appellee Piper Acceptance Corporation disposed of their repossessed airplane in a commercially reasonable manner pursuant to article 9 of the Arkansas Uniform Commercial Code (U.C.C.). *See* Ark.Stat.Ann. §§ 85–9–501 *et seq.* (Supp.1981). In particular, appellants allege that (1) they were not given reasonable notification of the time after which a private sale of the airplane was to be made;[2] (2) appellee failed to advertise the sale of the airplane adequately; and (3) appellee offered the airplane for sale entirely on a wholesale basis without seeking interested retail buyers. For the reasons discussed below, we affirm the district court's order.

On November 28, 1980 appellants purchased a used aircraft from Atlanta Aircraft Sales for $165,447.46. Appellants made a down payment and executed a conditional sale and security agreement to pay the balance of $136,536.96 in eighty-four installments of $1,625.44 each. That same day the contract was assigned to appellee for value given. Shortly thereafter appellants began complaining to the airplane's manufacturer, Piper Aircraft Corporation (Piper), about alleged defects in the airplane. Because appellants were dissatisfied with Piper's response, they refused to continue paying their monthly installments. Consequently, appellee accelerated all payments due under the contract and declared the agreement in default.

On September 23, 1981 appellee brought an action to replevin the aircraft, claiming that appellants owed $91,018.46, of which $84,835.34 was principal. Appellants voluntarily surrendered possession of the aircraft without prejudice to their rights to pursue any claims based on defects in the manufacture of the aircraft[3] and to require that any disposition of the aircraft be done in a commercially reasonable manner.

On October 20, 1981 appellee notified appellants by certified mail that the aircraft would be sold at a private sale on or after November 8, 1981.[4] On November 15, 1981 appellee advertised the aircraft to the Piper dealer network of about 550 dealers through a monthly bid letter publication. The ad stated that the airplane's logbooks were not available, which would tend to depress the value of the plane. The logbooks were unavailable because appellants refused to relinquish them to appellee. The highest offer appellee received for the aircraft was $68,000.00, provided that the logbooks could be obtained by the time of the closing. (Notably, the Aircraft Price Digest, which listed the resale prices of used aircraft, valued the airplane at only $63,018.00.) Counsel for appellants, in a letter dated February 15, 1982, advised appellee to "go ahead and sell the airplane without our having checked it further. Please give us notice of the time and date of the sale."

After several attempts by appellee to get the logbooks, appellants finally surrendered them on April 8, 1982, and the sale was consummated on April 26, 1982. Appellee did not notify appellants of the time and date of this sale as they requested. Applying the net proceeds of the sale to the outstanding balance resulted in a deficiency

1. The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas.

2. Ark.Stat.Ann. § 85–9–504(3) provides that "reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor."

3. Appellants subsequently instituted a third-party complaint against Piper on a products liability claim. That action is not involved in this appeal.

4. The notice read as follows:

YOU ARE HEREBY NOTIFIED that pursuant to a default under the terms and conditions of that certain security agreement executed on the 17th day of December, 1980, from Wilburn Y. & Sarah Yarbrough at .Atlanta Aircraft Sales Inc. and assigned to PIPER ACCEPTANCE CORPORATION, the undersigned, as holder of said security agreement and the indebtedness secured thereby, will sell the following described aircraft [description omitted] at one or more private sales on or after the 8th day of November, 1981.

of $33,313.49. The district court awarded appellee this amount after a hearing to determine whether the sale was commercially reasonable under the relevant provisions of the Arkansas U.C.C. This appeal followed.

■ Appellants' contention that they were not given *reasonable* notification of the time after which a private sale of the airplane was to be made turns on the fact that over five months had elapsed between the time they received notice of the sale in October and the consummation of the sale in April. This claim is without merit. The purpose of the reasonable notification requirement is to afford debtors "sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire." U.C.C. § 9–504 comment 5, *reprinted in* Ark.Stat. Ann. § 85–9–504 (Repl.1961). Appellee provided appellants sufficient notice to protect their interests and was under no statutory obligation to notify appellants of the exact time and date of sale. *See* B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 4.8[7][e] (1980) (sale handled on a private negotiated basis may have no exact time or place).

■ Appellants further attack the commercial reasonableness of the sale because appellee did not readvertise the plane to secure a higher offer after they had surrendered the logbooks. Testimony was presented at the hearing indicating that the absence of logbooks would depress the price of an airplane. There was no evidence adduced in the instant case, however, to suggest that the absence of logbooks influenced the amount of the bid actually received, especially considering that the bid was conditioned on appellee's ability to procure the logbooks. The fact that a better price might have been obtained by a sale at a different time and under different circumstances does not make the sale commercially unreasonable. *See* Ark.Stat.Ann. § 85–9–507(2). Furthermore, the letter of February 15, 1982 from appellants' counsel advising appellee to sell the plane arguably makes the question of the commercial rea-

sonableness of the sale immaterial. *See Pine Bluff Production Credit Assoc. v. Lloyd,* 252 Ark. 682, 480 S.W.2d 578, 584 (1972).

■ Finally, appellants complain that appellee never advertised or offered the plane for sale to retail buyers. This contention incorrectly assumes that a commercially reasonable foreclosure sale must be on a retail basis. The test for commercial reasonableness is set out in Ark.Stat.Ann. § 85–9–507(2), which in pertinent part provides:

> If the secured party either sells the collateral in the usual manner in any recognized market therefor, or if he sells at the price current in such market at the time of his sale, or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner.

Comment 2 to § 9–507 of the U.C.C., *reprinted in* Ark.Stat.Ann. § 85–9–507 (Repl. 1961), states:

> One recognized method of disposing of repossessed collateral is for the secured party to sell the collateral to or through a dealer—a method which in the long run may realize better average returns since the secured party does not usually maintain his own facilities for making such sales. Such a method of sale, fairly conducted, is recognized as commercially reasonable under the second sentence of subsection (2).

Appellee explained that industry practice by aircraft finance companies was to circulate available aircraft among dealers rather than attempt to reach individual prospective purchasers because the dealers were best suited to sell the planes and such a practice prevented the manufacturer from competing with its own retail network. In the circumstances of the present case, nothing suggests that appellee's method of selling the plane wholesale to dealers through a trade publication was commercially unreasonable.

The order of the district court is affirmed.