**K.B. OIL COMPANY,**
Plaintiff-Appellant,

v.

**FORD MOTOR CREDIT COMPANY, INC.; ITT Industrial Credit Company; William P. Dunn, Defendants-Appellees.**

No. 85–4024.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 11, 1986.

Decided Feb. 10, 1987.

Danny D. Johnson, Johnson & Johnson Co., L.P.A., New Philadelphia, Ohio, Robert C. Urban, Jr. (argued), for plaintiff-appellant.

Hamilton DeSaussure Jr. (argued), Buckingham, Doolittle & Burroughs, Akron, Ohio, Thomas H. Shunk (argued), Cleveland, Ohio, for defendants-appellees.

Before LIVELY, Chief Judge, KEITH and MERRITT, Circuit Judges.

KEITH, Circuit Judge.

K.B. Oil Company appeals from the order entered by Judge Dowd of the United States District Court, Northern District of Ohio, granting summary judgment for defendants Ford Motor Credit Company and ITT Industrial Credit Company. Plaintiff

K.B. Oil commenced this diversity action September 18, 1984, alleging that Ford Motor Credit Company (FMCC) unlawfully repossessed two pick-up trucks purchased on installment by K.B. Oil. K.B. Oil also alleged that ITT Industrial Credit Company (ITT) wrongfully repossessed two truck rigs, also purchased on installment, and resold them in a manner not in accordance with Ohio Rev.Code § 1309.47(C).[1] K.B. Oil finally claimed that ITT tortiously interfered with the prospective economic advantage arising from K.B. Oil's planned sale of the rigs. The district court in a memorandum opinion held that FMCC properly repossessed the trucks under both Ohio law[2] and its retail installment contracts with K.B. Oil. In a separate memorandum opinion, the district court held that ITT had established the resale of the truck rigs to be commercially reasonable under Section 1309.47(C). For reasons stated below, we affirm the summary judgments of the district court.

## I.

### FACTS

A. *Ford Motor Credit Company*

In 1981, K.B. Oil purchased two Ford pick-up trucks and financed their purchase through the Ford Motor Credit Company. Pursuant to the two retail installment contracts executed at the time of sale, K.B. Oil agreed to pay $370.77 per month for one truck and $314.28 per month for the other truck. In 1982, FMCC extended the loan terms and agreed that K.B. Oil could pay the October and November 1982 payments at the end of the loan repayment period in July, 1985. From December, 1982 to October, 1983, however, K.B. Oil was delinquent in making its payments on the installment contracts. In October, 1983,

FMCC repossessed the two trucks and sent a "notice of repossession and right to redeem," as well as a notice of resale listing the date, time and place of sale. At the time of repossession, K.B. Oil was two months delinquent on the first truck's account and three months delinquent on the second. K.B. Oil never exercised its right to redeem nor did it repurchase the trucks.

B. *ITT Industrial Credit Company*

In 1982, K.B. Oil purchased two truck rigs and financed the purchase with a promissory note and security agreement between itself and ITT Industrial Credit Company. The promisory note required K.B. Oil to make monthly installment payments of $3,070.00 on a principal of $84,895.50. The security agreement named ITT as secured party and the two purchased rigs as collateral. In 1984, K.B. Oil failed to make timely payments on the promissory note. In an effort to sell the rigs and pay off the note, K.B. Oil transferred possession of the rigs to a dealer in industrial equipment located in West Virginia. ITT hired a repossession agent, William P. Dunn, who eventually located the rigs on the industrial equipment dealer's property. ITT repossessed the rigs but did not remove them from the dealer's premises. At the time of repossession, K.B. Oil owed roughly $82,000 on the promissory note.

After due notice was given to the president of K.B. Oil, ITT's resale of the rigs was advertised in trade magazines. Solicitations for bids were mailed to the members of the Ohio Oil and Gas Association. These efforts yielded three bids for each of the two rigs. ITT sold the two rigs for $98,000. ITT then subtracted the balance of the account, the cost of hiring Mr. Dunn to locate the rigs, advertisement costs, legal and insurance expenses, storage costs,

---

1. Ohio Rev.Code § 1309.47(C) is a codification of Uniform Commercial Code 9–504 and provides in part that "[d]isposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable."

2. Ohio Rev.Code § 1309.46 (U.C.C. 9–503) states in pertinent part: "Unless otherwise agreed a second party has on default the right to take possession of collateral."

and repair costs from the resale proceeds, leaving a $203.05 deficiency to be paid by K.B. Oil.

## II.

## DISCUSSION

### A. *Ford Motor Credit Company*

■ K.B. Oil argues that FMCC wrongfully repossessed the two Ford trucks in October 1983 because FMCC had for the previous eleven months established a "course of conduct" by accepting late payments. This course of conduct, it is argued, led K.B. Oil to believe that installment payments could be made without fear of repossession at times other than the time of payment specified in the contract. It is undisputed that FMCC agreed to accept the October and November 1982 payments at the end of the contracted payment period. It is also undisputed, however, that within the four corners of K.B. Oil's retail installment contract, FMCC had the right to repossess the trucks upon late payment. *See* Ohio Rev.Code § 1309.46 (UCC9-503). The form contract stated that upon K.B. Oil's failure "to make any payment when it is due ... the creditor [FMCC] may repossess the vehicle." The contract also stated that "[t]he creditor's acceptance of any late payment or late charge does not excuse the Buyer's [K.B. Oil's] default or mean that the Buyer can keep making payments after they are due. The Creditor may accelerate the remaining payments and repossess the vehicle ... if there is any default."

K.B. Oil seeks to avoid the clear language of the contract by arguing that FMCC's conduct operated as a waiver of FMCC's contractual right to repossess. Ohio caselaw supports the proposition that when a reasonable time passes without action by the parties a course of conduct may be viewed as enlarging a reasonable time for tender or demand of performance. *See Davis v. Suggs*, 10 Ohio App.3d. 50, 460 N.E.2d 665, (1983). In the case of *Miraldi v. Life Insurance Company of Virginia*, 48 Ohio App.2d 278, 356 N.E.2d 1234 (1971) for example, an Ohio appellate court held that forfeiture is not favored if waiver can be inferred. In *Slusser v. Wyrick's Auto Sales*, 28 Ohio App.3d 96, 502 N.E.2d 259, an Ohio state court held that a used car dealer's repossession of an individual consumer's recently purchased car, without notice, was unlawful in light of the dealer's continuous acceptance of the consumer's late payment defaults. Under the circumstances of the case, the court found that Uniform Commercial Code 9–503 (Ohio Rev.Code § 1309.46) imposed a duty on the creditor auto dealer to notify the debtor consumer of his intent to hold the consumer in strict compliance with the terms of the contract.[3]

We do not find *Slusser* and the other cases persuasive in this case, however. The factual contexts of these cases involve the protection of individual, inexperienced consumers against larger, usually more sophisticated creditors. In *Slusser*, for example, there were indications that the auto dealer repossessed the vehicle and sold it at a public sale to a third party who then resold the vehicle back to the dealer for future sale. Given such "churning" tactics, the court was correct in protecting the consumer from forfeiture.

In the instant case, the parties are two commercial enterprises, one of them, K.B. Oil, undoubtedly experienced in the purchase of equipment for its business operations. We need not extend to K.B. Oil the

---

**3.** UCC 9–503, codified at Ohio Rev.Code § 1309.46 provides:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides, the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal, a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under Section 1309.47 of the Revised Code.

*See* n. 1 for text of § 1309.47.

same degree of protection from forfeiture that we would extend to an individual, inexperienced consumer in an isolated secured transaction or an insurance policy dispute. *See Miraldi.*

Moreover, Ohio Rev.Code § 1309.46 gives FMCC the right to take possession of the pick-up trucks after default. The statute itself does not provide for the possibility of waiver. The contract is equally clear and states that acceptance of late payment neither excuses default on K.B. Oil's part nor waives FMCC's right to accelerate payments and repossess the trucks. By failing to make timely payment after November of 1982, K.B. Oil gave FMCC the right under the contract to repossess the vehicles. The evidence before the district court, viewed in the light most favorable to K.B. Oil, does not show any extension permitted for the delinquent payments after November 1982 nor any other action or omission that could be seen as a waiver of FMCC's right to repossess. In light of its contract with FMCC, K.B. Oil also could not have reasonably relied on FMCC's acceptance of late payments as a waiver of FMCC's right to repossess. The district court was therefore correct when it found no genuine issue of material fact and granted summary judgment in favor of FMCC.

### B. *ITT Industrial Credit Company*

In its appeal of the separate order granting summary judgment in favor of ITT, K.B. Oil argues that in the course of ITT's repossession of the rigs, ITT's agent, William C. Dunn, made "fraudulent and material misrepresentations." These misrepresentations allegedly consisted of Dunn telling the West Virginia truck equipment dealer on whose premises the rigs were located that Dunn had the permission of K.B. Oil to repossess the trucks when no

such permission was given. These fraudulent misrepresentations, K.B. Oil argues, are a breach of the peace in the course of repossession and therefore a violation of Ohio Rev.Code § 1309.46.[4]

K.B. Oil also argues that the subsequent resale of the truck rigs was not commercially reasonable, in violation of Ohio Rev. Code § 1309.47.[5] In support of this claim, K.B. Oil asserts that while it paid $280,000 for the rigs, two years later ITT resold them after the repossession at a private sale for only $98,000. K.B. Oil contends that the $182,000 difference creates a genuine issue of material fact as to the commercial reasonableness of the sale. Finally, K.B. Oil maintains that it was negotiating the purchase of the two rigs by a third party for a price substantially greater than that received by ITT in the private sale. K.B. Oil claims that an agreement to purchase was withdrawn when an ITT employee provided information to the buyer that one of the two rigs was worth significantly less than the agreed sale price. As a result, K.B. Oil claims that ITT tortiously interfered with its prospective economic advantage. We turn to the merits of K.B. Oil's claims *in seriatim.*

### 1. *Wrongful Possession*

██ As noted above, K.B. Oil claims that a genuine issue of material fact exists as to whether ITT's alleged misrepresentations led to a breach of the peace in violation of Ohio Rev.Code § 1309.46. The district court memorandum opinion mentions the alleged misrepresentation only in passing and, as this comes before us on a summary judgment motion, we have little more than the bare assertions of K.B. Oil that Mr. Dunn actually made these misrepresentations.[6] Based on the scant evidence before

---

**4.** The relevant portion of § 1309.46 states: "In taking possession a secured party may proceed without judicial process if this can be done *without breach of peace . . .*" (emphasis added).

**5.** § 1309.47 requires "every aspect of the [sale of the repossessed collateral] including the method, manner, time, place, and terms [to be] commercially reasonable."

**6.** In its appellate brief, K.B. Oil refers to a letter written by its counsel in November 1983 as support for its fraud claim. One paragraph of that letter merely reiterates the misrepresentation charge. Additionally, ITT propounded "discovery requests" to K.B. Oil in which ITT requested:

If you claim that misrepresentations were made to you or to others regarding the repos-

the court, we find the court did not commit error when it found no genuine issue of material fact regarding the alleged misrepresentations. Even if misrepresentations were made, however, Ohio precedent on the meaning of "breach of the peace" does not apply to the circumstances in this case.

In *Morris v. The First National Bank & Trust Co.*, 21 Ohio St.2d 25, 254 N.E.2d 683 (1970), for example, the Ohio Supreme Court discussed the statute's "fundamental public policy of discouraging extrajudicial acts by citizens when those acts are fraught with the likelihood of resulting violence." 21 Ohio St.2d at 29, 254 N.E.2d at 686. Similarly, in *Kimble v. Universal TV Rental, Inc.*, 65 Ohio Misc. 17, 417 N.E.2d 597 (1980), the court defined a breach of the peace as an "act inciting violence or tending to provide or excite others." The facts of each of these cases are such that the creditor's efforts to remove property from the debtor created a potential for immediate violence. Here, the facts surrounding Mr. Dunn's repossession of the rigs do not support a potential for immediate violence. Dunn, as ITT's agent, was dealing with an unrelated third party and did not attempt to remove the rigs from that party's property. There is no evidence that his acts provoked violence or were of the sort to do so. We decline, therefore, to expand Ohio's "breach of peace" doctrine to include misrepresentation, especially on the basis of an undeveloped record.

### 2. *Commercial Reasonableness*

To restate, K.B. Oil claims that ITT's resale of the trucks was not commercially reasonable and thus in violation of Ohio Rev.Code § 1309.47. ITT bears the burden of proof on the commercial reasonableness of the resale, as the burden of proof lies with the secured party. *United States v. Willis*, 593 F.2d 247, 258 (6th Cir.1979); *First National Bank v. Turner*, 1 Ohio App.3d 152, 155, 439 N.E. 2d 1259, 1263 (1981); *see also California Airmotive*

*Corp. v. Jones*, 415 F.2d 554 (6th Cir.1969). While the "ultimate aim of the statute is that the highest price be realized from the collateral sold or the benefit of all parties," *Turner*, 1 Ohio App.3d at 155, price is not completely determinative. *Willis*, 593 F.2d at 259. Rather, a sale is "commercially reasonable" under the statute if the selling party "(1) acts in good faith; (2) avoids loss; and (3) makes an effective realization. Furthermore, the party may obtain court approval if he (4) sells in the usual manner in a recognized market, or (5) sells at the current price in a recognized market, or (6) sells in conformity with reasonable commercial practices among dealers in the type of property." *Id.* (citations omitted).

■ In this case, ITT showed their good faith by giving prompt notice to K.B. Oil of its intent to sell the repossessed rigs in a private sale. ITT's efforts to market the rigs through trade publications and direct mailings to members of the state oil producer's association shows that the sale was intended to mitigate loss on the debt. The sale also made an "effective realization" of the $82,742.11 balance owed to ITT by K.B. Oil, leaving K.B. Oil with a mere $200.00 deficiency. The method of sale, namely soliciting bids from other oil dealers in the state, was a reasonable commercial practice that reached an identifiable market interested in the trucks (namely other oil companies in the same line of business as K.B. Oil).

K.B. Oil's main objection is to the price ($98,000) obtained for the rigs. However, "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." Ohio Rev.Code § 1309.50(B). Moreover, this is not a case where there is little or no evidence tending to prove the value of the resold truck rigs, *see, e.g., First National Bank v. Turner.* The record is

---

session, please identify what was misrepresented, who made the misrepresentations, and to whom the misrepresentations were made.

K.B. Oil did not respond to the discovery request.

replete with evidence of ITT's extensive marketing efforts to elicit a fair price or bid for the trucks. K.B. Oil's assertions of what the market price should have been cannot be seen as raising a genuine issue of material fact regarding the reasonableness of the sale. *See e.g., Northern Financial Corp. v. Kesterson,* 31 Ohio App.2d 256, 287 N.E.2d 923 (1971).

In light of Ohio Rev.Code § 1309.50 and the requirements outlined in *Willis,* we find that the trial court did not err in granting summary judgment for ITT on this issue. As to the reasonableness of the repossession costs deducted from the sale, K.B. Oil failed to produce anything other than its bare allegations that the costs were unreasonable. Hence, summary judgment was appropriate.

### 3. *Interference With Prospective Economic Advantage*

■ K.B. Oil alleges that as a result of information which ITT relayed to a prospective buyer, the sale of the rigs to the buyer failed to occur. ITT's action, K.B. Oil contends, tortiously interfered with K.B. Oil's prospective economic advantage. We find this claim difficult to countenance since at the time K.B. Oil attempted to sell the rigs it could not have legally sold the trucks under its security agreement with ITT. The security agreement provides that K.B. Oil "will not, except upon the express prior written consent of the secured party, sell or pledge all or any part of the collateral [the rigs]." As K.B. Oil failed to even allege the existence of ITT's consent, the district court correctly declined to allow K.B. Oil a claim based on a transaction that, if completed, would have been an evident breach of contract. Summary judgment was therefore appropriate.

### III.

### CONCLUSION

In light of the foregoing, we AFFIRM the judgments of the Honorable David D. Dowd, Jr. granting summary judgment in favor of FMCC and ITT.