In re George T. GOTT, Jr., dba, Denominational Building Services, dba Creative Development Enterprises, Debtor.

**Bankruptcy No. 287–05507–B–11.
Motion No. EA–2.**

United States Bankruptcy Court,
E.D. California.

May 25, 1990.

Christopher P. Valle–Riestra, Eskanos & Adler, Oakland, Cal., for claimant, Piper Acceptance Corp.

Michael S. McManus, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for debtor, George T. Gott, Jr.

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Bankruptcy Judge.

The above-entitled motion was brought regularly before this court by Claimant Piper Acceptance Corporation (hereinafter "PAC") and was taken under submission by this court following oral arguments. Alleging that George T. Gott, Jr. (hereinafter "Debtor") failed to properly notify it of the referenced objection to the claim, the opportunity for a hearing therefor, and the subsequent order sustaining the Debtor's objection, PAC moves this court to reconsider its August 15, 1989 order denying PAC's $154,030.30 unsecured claim and to overrule Debtor's objections thereto.

■ Generally, a court may properly deny a Rule 60(b) motion where (1) the party not in default will be prejudiced if the motion to vacate the default is granted, (2) the defaulting party's conduct led to the default, or (3) the party in default has no meritorious defense. (*Direct Mail Spec. v. Eclat Computerized Tech.*, 840 F.2d 685, 690 (9th Cir.1988), citing *Pena v. Seguros la Comercial, S.A.*, 770 F.2d 811,815 (9th Cir.1985) and *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984)).

■ In this particular case, Debtor does not contend that he would be significantly prejudiced by the vacation of the default. Furthermore, it is not readily apparent that the defaulting party's conduct caused the default. Rather, the confusion clearly stemmed from Debtor's decision, inadvertent or otherwise, to ignore the mailing address on the face of the claim and, instead, mail notice *only* to PAC's former special counsel.[1] In light of the acknowledged theory that a Claimant's failure to reflect his or her correct address on the proof of claim and the Debtor's reliance thereon may result in a waiver by the former of the right to notice[2], it would be grossly unfair to preclude the claimant who has included the correct, current address on the claim from responding to an objection to that claim simply because the objecting party chose to mail notice to some other entity or address.[3]

■ Finally, Debtor argues that PAC is unable as a matter of law to raise a meritorious defense to Debtor's objection to its claim because PAC failed to dispose of its collateral (a Piper airplane) in a "commercially reasonable" manner and, pursuant to applicable law[4], is absolutely precluded from seeking a deficiency judgment against Debtor[5]. The court must disagree

---

1. The special counsel in question was the Law Offices of James G. Schwartz, whose limited involvement with the case (objecting to Debtor's disclosure statement) had ended on or about March 23, 1988, almost a full year before the notice of the objection was filed and served upon his offices (July 17, 1989). (Declaration of James G. Schwartz, filed 2/8/90, at p. 2, ¶¶ 5, 7).

2. 8 Collier on Bankruptcy (15th Ed.1989), ¶ 3007.03[4], note 2, citing, *inter alia, In re Auto–Train Corp.*, 57 B.R. 566 (Bankr.D.C.1986).

3. Mr. McManus, Debtor's counsel, has testified that he served Mr. Schwartz' office with the notice of the objection in reliance of his understanding that Schwartz had substituted in as PAC's regular counsel. (Declaration of Michael S. McManus, filed 2/27/90, at p. 4, ¶ 10(b), p. 6, ¶ 18). The better practice, of course, would be to always send notice to the address specified in

the claim, and then to such other addresses as are appropriate.

4. The court agrees with PAC that pursuant to California "conflicts" law (Cal.Com.Code § 1105(1)) and the "choice of forum" provision set forth in the original sales agreement between PAC and Debtor (Ex. "Q", Declaration of Leon R. Acor, filed 2/8/90, at ¶ 13, p. 2), the purchase/sale agreement and, specifically, the issue of the commercial reasonableness of PAC's disposition of the collateral pursuant to ¶ 11 (Remedies) of said contract shall be governed by Florida state law.

5. The Florida Supreme Court has recently decided that when a secured party fails to dispose of collateral in a commercially reasonable manner, there arises only the rebuttable presumption that the fair market value of the collateral at the time of repossession was equal to the

both with Debtor's contention that PAC has failed to raise a meritorious defense and that the sale of the collateral in this instance was conducted in a commercially unreasonable manner.

The gist of Debtor's argument is that although PAC gave notice of a "private sale", it actually utilized a "public sale" procedure (manifested by the great lengths PAC went to advertise the plane in a multitude of various trade magazines and aircraft listings) thereby triggering the necessity of compliance with the public sale notice requirements (notice of "time and place" of the sale) rather than the more liberal notice allowed for private sales (notice only of the time after which any sale or other intended disposition was to have been made).[6]  (F.S.A. § 679.9504(3)).

Although neither the text of F.S.A. § 679.9–504(3) nor the Florida Code Comments shed any immediate light upon the distinction between a "public" versus a "private" sale, the Official Comments state that

"[a]lthough public sale is recognized, it is hoped that private sale will be encouraged where, as is frequently the case, private channels will result in higher realization on collateral for the benefit of all parties." (Uniform Comm.Code Comment, ¶ 1, reprinted, West, F.S.A. § 679.9504).

This language leads the court to believe that authors of the U.C.C. intended that "privately arranged" sales constitute "private sales" while auctions and "fire sales" are indicative of a "public sale"[7]. The court finds further support for this interpretation in paragraph 4 of the Official Comments to U.C.C. § 2–706[8] which expressly defines public and private sales for the purposes of determining "reasonable commercial practices" as sale by "auction" and sale by "solicitation and negotiation" respectively.[9]

---

amount of the total debt it secured. (*Weiner v. American Petrofina Marketing, Inc.,* 482 So.2d 1362 (Fla.1986)).  This analysis jibes with the decisions coming out of a growing minority of jurisdictions. (*See generally,* Tinney, "Failure of Secured Party to Make 'Commercially Reasonable' Disposition of Collateral under U.C.C. § 9504(3) as Bar to Deficiency Judgment", 10 ALR4th 413; Spivey, "Failure of Secured Creditor to Give Required Notice of Disposition of Collateral as Bar to Deficiency Judgment", 59 ALR3d 401).  Nonetheless, where as here the sale has been found to have been conducted in a commercially reasonable manner, the distinction necessarily becomes moot.

6.  The actual notice sent to Debtor on or around May 31, 1988 read as follows;
"YOU ARE HEREBY NOTIFIED that pursuant to a default under the terms and conditions of that certain Security Agreement executed on the 18th day of January, 1983, ... [PAC] will sell the following described aircraft: 1982 Piper PA602P N6899D s/n 60–8265014 at one or more private sales on or after the 27th day of June, 1988." (Ex. "S", Declaration of Leon R. Acor, Filed 2/8/90).
PAC solicited bids for the Piper on April 28, 1988 (Ex. "B", Acor Declaration) and again on May 28, 1988 (Ex. "C", Acor Decl.).  The listing required that the bids be executed by an authorized individual via telex, mailgram, or letter to PAC, and that no bids would be accepted after 2:00 pm, June 28, 1988.  PAC reserved the right to reject any and all bids and represented that the highest acceptable bidder would be notified promptly and required to make payment in full of their bid or satisfactory financing arrangements by 10.00 a.m., EST, June 30, 1988, or the bid might be voided. (Ex. "C", Acor Decl.).  The Piper was ultimately sold on or around July 16, 1988 to Tampa Wings, Inc., a Florida retailer, for the high bid of $105,750.00. (Acor Decl., at p. 5, ¶ 16; Ex. "P", Acor Decl. (Purchase agreement)).

7.  For scholarly analyses of the distinction between public and private sales for the purposes of U.C.C. § 9–504(3), *see, e.g.,* 60 ALR4th 1012, "Public or Private Sale Under U.C.C. § 9–504(3)"; 2 White & Summers, *Uniform Commercial Code,* Hornbook Series (3rd Ed. 1988), at § 27–11; 2 Gilmore, *Security Interests in Personal Property* § 44.6, et seq. (1965).

8.  § 2–706 (incorporated by F.S.A. § 672.2–706) governs a seller's remedy to resell wrongfully rejected goods (2–703) and provides, *inter alia,* that a seller may recover certain described damages if the goods are resold in good faith and in a commercially reasonable manner.  (§ 2–706(1)).  The section further provides that the resale may be at either a "public" or "private" sale (§ 2–706(2)) and dictates the type of notice required for each. (§§ 2–706(3), (4)).  Not.unlike § 9–504(3), § 2–706 prescribes a vastly more liberal notice requirement for the private versus the public sale.

9.  Certainly the Debtor is not unduly prejudiced by the court's position in this matter.  Not only did he receive over one month's notice of the

■ Consequently, because PAC provided the requisite notice to Debtor of the proposed private sale and, further, because PAC did an exemplary and, indeed, successful job of "drumming up" bidders for the sale, the court is not inclined to find that the sale was conducted in a commercially unreasonable manner.[10]

### DISPOSITION

Consistent with and for the reasons set forth in the above Memorandum, the court will grant PAC's motion for reconsideration, overrule the Debtor's objections to PAC's first amended claim, and allow PAC's unsecured claim in the amount of $154,030.30. Furthermore, the Debtor shall be required to transfer the full amount of each $25,000.00 quarterly payment due to class # 11 under the confirmed Chapter 11 plan to PAC until such time that PAC has received payment on account of its claim proportionate in value to that already received by the other members of the class. (11 U.S.C. § 502(j)). Finally, PAC's motion for sanctions will be denied as inappropriate under the circumstances.

As the prevailing party, Counsel for PAC shall recover costs upon submission of an appropriate cost billing (Local Rule 292(b), United States District Court, Eastern District of California) and should forthwith prepare and submit a separate, proposed judgment consistent with this decision.

---

sale during which time he was free to inquire into the nature of the sale, but he expressly stipulated to the disposition of the collateral in his confirmed plan of reorganization. Further, the ultimate resale price recovered by PAC ($105,750.00) was well within the $100,000 to $110,000 estimate offered earlier by Debtor himself. (Ex. "X", Acor Declaration).

10. Assuming that Debtor continues to rely upon U.C.C. § 3–606 (F.S.A. § 673.606) for relief from the deficiency judgment, and to the extent said section applies to the disposition of collateral other than negotiable instruments, the court finds for the reasons set forth above that PAC did not "unjustifiably impair" any such collateral. The court also rejects Debtor's contention that the "wholesale" as opposed to the "retail" disposition of the airplane was commercially unreasonable for the reasons set forth in *Piper Acceptance Corporation v. Yarbrough,* 702 F.2d 733, 735 (8th Cir.1983). Further, the court overrules Debtor's objection that the foreclosure sale notice was fatally flawed because no statement that a deficiency following sale would be sought was included. The U.C.C. imposes no such notice requirement and, as PAC correctly points out, the only case provided by Debtor in direct support of such a contention was expressly overruled by the Supreme Court of Nebraska in the decision of *First State Bank, Fremont v. Reed,* 422 N.W.2d 359 (Neb.1988). Finally, the court finds no flaws, facial or otherwise, in PAC's first amended proof of claim.