**Piper Acceptance Corp.**
v.
**Bischoff**
*[Cite as 4 AOA 30]*

*Case No. C-890329*
*Hamilton County (1st)*
*Decided June 27, 1990*

C. Thomas Dupuis, Esq., 2208 Central Trust Tower, Cincinnati, Ohio 45202, for Plaintiff-Appellee.

Daniel E. Whiteley, Esq., 1000 Mercantile Center Building, 120 East Fourth Street, Cincinnati, Ohio 45202, for Defendants-Appellants.

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the assignment of error, the briefs and the arguments of counsel.

Defendants-appellants Mark Bischoff and Steve Wells appeal from the trial court's order granting summary judgment in favor of plaintiff-appellee Piper Acceptance Corporation ("PAC") on PAC's claim for a deficiency judgment of $102,963.50 plus interest of $152,493.45, arising from their personal guarantees of a debt principally incurred by the Tenax Corporation ("Tenax") for its purchase of a 1979 Piper Navajo airplane. The plane was repossessed and sold by PAC after Tenax defaulted on its loan. In their appeal, Bischoff and Wells assert that genuine issues of material fact concerning the "commercial reasonableness" of the sale under R.C. Chapter 1309 should have precluded summary judgment. We agree and, for the reasons discussed below, we reverse the judgment of the trial court and remand for further proceedings.

The pleadings, depositions and transcripts before the court below show that Tenax purchased the airplane on January 3, 1980, for $303,330 from a Piper dealership that contemporaneously assigned its interest in the purchase contract to PAC. PAC took possession of the plane after Tenax defaulted on the loan payments on August 31, 1981. At the time, the aircraft had been flown a greater-than-average number of hours, and its condition showed that it had been heavily used.

PAC notified the guarantors of the loan, including Bischoff and Wells, that the plane would be sold at a private sale on or after September 23, 1981. At the same time, PAC prepared a repossession listing describing the aircraft and advertised it for sale. The repossession listing was distributed nationwide to over 800 Piper outlets, including its 400 dealers, plus its distributors and service centers, and other individuals interested in buying Piper aircraft. The plane was advertised for acceptance of bids on the fifteenth of each month from September 1981 to December 1981.

PAC initially decided to place an asking price of $185,000 on the airplane according to a market publication of aircraft prices called *The Aircraft Bluebook Price Digest* (the "*Bluebook*") for the fall of 1981, and PAC's inspection of the aircraft. Among the various valuations of an aircraft published in the *Bluebook*, which include a retail value, a wholesale value and an inventory value, PAC used one of the lower values, its inventory value, because the plane had been repossessed. PAC received one bid of $179,500 from the plane's eventual buyer, but did not immediately accept the bid because the buyer also required installation of an air-conditioning unit that would have cost approximately $14,000. A later bid $185,000 requiring installed air conditioning and 100% financing by PAC was tendered on November 23, 1981, by the same party, but was also refused by PAC. The plane was finally sold "as is" to its buyer for $170,000 after the last published bid closing date had passed.

PAC appended to its successful motion for summary judgment[1] an affidavit of PAC's President, Thomas D. Harvell, in which Harvell asserted that the private-sale procedures used by PAC conformed to its regular and customary business practices, that current industry practice was to advertise repossessed aircraft to dealers and not individual purchasers, and that, in his opinion, the sale of the Piper Navajo was within the accepted commercial standards for sale of a repossessed aircraft and was therefore a commercially reasonable sale.

The assertions made in Harvell's affidavit, however, directly contradict those made in the previously filed affidavit of Bischoff and Well's expert witness, Eric J. Kornau. Kornau's affidavit stated that PAC's adoption of a low wholesale price in determining its asking price, its failure to advertise the plane outside of the Piper outlet system in an industry-wide publication such as

"Trade-A-Plane," and its failure to obtain an independent appraisal of the plane were not in accordance with accepted minimum industry standards for dealers or sellers and, therefore, that the sale was not commercially reasonable.

Civ.R. 56(C) provides that summary judgment may be granted only if the record shows that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Under the rule, summary judgment shall not be rendered unless it appears from the evidence that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." Civ.R. 56(C).

Under R.C. 1309.47(C), a secured party in possession of collateral after a default may dispose of the collateral by public or private sale "at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable." Although further definition of the standard that a sale be "commercially reasonable" is not included in R.C. 1309.47, a secured party's obligation to comply with that standard is elaborated by R.C 1309.50(B), which in pertinent part provides:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner."

Official Comment 2 to R.C. 1309.50, concerning the question of whether a sale at a retail price is required in all cases, states:

" One recognized method of disposing of repossessed collaterial is for the secured party to sell the collateral to or through a dealer - a method which in the long run may realize better average returns since the secured party does not usually maintain his own facilities for making such sales. Such a method of sale, fairly conducted, is recognized as commercially reasonable under the second sentence of division (B). However, none of the specific methods of disposition set forth in division (B) is to be regarded as either required or exclusive, provided only that the disposition made or about to be made by the secured party is commercially reasonable."

In *Piper Acceptance Corp. v. Yarborough* (C.A. 8, 1983), 702 F.2d 733, PAC's method of advertising a repossessed plane to its own network of dealers through a monthly bid-letter publication, and its failure to advertise the plane to retail buyers, was held to be commercially reasonable under Arkansas' enactment of U.C.C. 9-507. After noting the language of U.C.C. 9-507 and Comment 2 quoted above, the court further noted that evidence before the district court showed that dealers in the industry were better suited to sell the planes and that the practice prevented the manufacturer from competing with its own retail network. The court concluded that "[i]n the circumstances of the present case, nothing suggests that [PAC]'s method of selling the plane wholesale to dealers through a trade publication was commercially unreasonable." *Id.* at 735.

Six factors indicating commercial reasonableness under R.C. 1309.47 were set forth in *K.D. Oil Co. v. Ford Motor Credit Co., Inc.* (C.A. 6, 1987), 811 F.2d 310. Those factors are whether the selling party (1) acts in good faith; (2) avoids loss; and (3) makes an effective realization; and, further, whether he (4) sells in the usual manner in a recognized market, or (5) sells at the current price in a recognized market, or (6) sells in conformity with reasonable commercial practices among dealers in the type of property. *Id.* at 314. In its determination that summary judgment was properly granted, the Sixth Circuit noted that the record was "replete with evidence of [the secured party]'s extensive marketing efforts to elicit a fair price or bid" for the repossessed property, and that the debtor "failed to produce anything other than its bare allegations that the costs were unreasonable." *Id.* at 315.

Although summary judgment was properly granted in both *Yarbrough*[2] and *K.B. Oil,* the language from each case quoted above reflects that in neither case was the court presented with contradictory evidence that created a genuine issue of material fact on the issue of commercial reasonableness, in contrast to the opposing affidavits before the trial court here. We hold that the opposing affidavits create a genuine issue of material fact -- whether PAC's sale of the plane was commercially reasonable under R.C. 1309.47 and 1309.50(B) -- that precludes summa-

ry judgment under Civ. R. 56(C). In particular, we note that Kornau's affidavit raises questions concerning the commercial reasonableness of the plane's advertised price, a low wholesale value between inventory value and wholesale value. We recognize that a resale of repossessed collateral to a dealer at a wholesale price does not, by itself, render the sale commercially unreasonable. *See Ford Motor Credit Co. V. Potts* (1989), 47 Ohio St. 3d 97, 548 N.E.2d 223. The circumstances of this case, however, in which the collateral's allegedly marginal wholesale price, the secured party's failure to solicit buyers outside its own network of dealers, and its failure to obtain an independent appraisal have all been called into question, prevent us from applying the general rule as a matter of law. The facts and circumstances of this case, and their conformity with reasonable commercial practices of airplane dealers, must be developed below. *See California Airmotive Corp. v. Jones* (C.A. 6, 1969), 415 F.2d 554.

The judgment of the trial court is, accordingly, reversed, and this cause is remanded for further proceedings consistent with this Decision.

*Judgment reversed and cause remanded.*

SHANNON, P.J., KLUSMEIER and GORMAN, JJ.

---

[1] An earlier motion for summary judgment by PAC had been denied by the trial court on July 30, 1985, on the ground that genuine issues of material fact concerning the commercial reasonableness of the sale precluded summary judgment under Civ.R. 56(C). The affidavit of Thomas Harvell, President of PAC, attached to PAC's second motion for summary judgment, was not before the court at the time, however.

[2] It is unclear from the text of the decision in *Yarbrough* from what stage of the proceedings the appeal was taken. It appears, however, that *Yarbrough* was decided on summary judgment. See *Yarbrough, supra,* at 735 ("The district court awarded appellee this amount after a hearing to determine whether the sale was commercially reasonable * * *.").