**FIRST NATIONAL BANK OF CINCINNATI, Appellee,**

v.

**CIANELLI, Appellant.**

[Cite as *First Natl. Bank of Cincinnati v. Cianelli* (1991), 73 Ohio App.3d 781.]

Court of Appeals of Ohio,
Butler County.

No. CA90–10–203.

Decided June 17, 1991.

*Vesper & Algie and Paul J. Vesper,* for appellee.

*Robert Gutzwiller,* for appellant.

*Per Curiam.*

Defendant-appellant, Joseph Cianelli, appeals a judgment of the Butler County Court of Common Pleas in favor of plaintiff-appellee, First National Bank of Cincinnati.

On July 3, 1985, First National and Cianelli entered into a "closed-end vehicle lease agreement" for the lease of a 1985 Buick sedan. Pursuant to the agreement, Cianelli was required to pay $260 on the fifth day of each month. Cianelli was also required to maintain the vehicle, keep it free from liens and make it available for inspection by First National. The lease provided that if Cianelli failed to make a monthly payment within thirty days of the due date or if he otherwise failed to keep his promises under the lease, First National could "treat [the] lease as being in default * * *."

During the next two years, Cianelli made payments under the lease, although they were frequently late. Several payments were more than thirty days late. In August 1987, the engine in the leased car was destroyed by an explosion and fire. The car was towed to a Buick dealer in Cincinnati. In the subsequent weeks, Cianelli had difficulty locating a new engine. Therefore, on September 15, 1987, Cianelli had the car towed to an engine repair "specialist" in Indiana while he searched for a new engine.

During this time, a dispute arose between Cianelli and First National regarding repairs to the car and Cianelli's obligation under the lease. Employees of First National claim that Cianelli informed them in August 1987 that the vehicle's engine had exploded and that he did not intend to make any more payments on the lease. They also claim that Cianelli would not inform them of the vehicle's location and that they located the vehicle through the Buick dealer. Cianelli denied these allegations, claiming that no one from First National had ever asked about the vehicle's location and that First National could easily have determined the vehicle's location by calling the Buick dealer. Cianelli also described various communications between him and his wife and First National employees regarding his efforts to locate an engine and his dealings with the car manufacturer.

As of October 15, 1987, the payments due on September 5, 1987 and October 5, 1987 remained unpaid. On this date, First National terminated the lease, paid storage charges due to the auto repair shop in Indiana and repossessed the vehicle. However, the engine and transmission were left in Indiana. First National claimed that the reason for its actions included monetary default, failure to make payments, and non-monetary default, failure to allow inspection of the vehicle and allowing liens to attach to the vehicle. On the same day that the car was repossessed, First National received the September payment. It received the October payment the following day.

In early October, Cianelli had located and ordered an engine at a cost of approximately $1,200. The engine did not arrive until after the vehicle was repossessed. Cianelli claims he called First National and asked for the car to be returned so he could put the new engine in it. First National employees

claimed he never asked for the vehicle to be returned, but rather threatened to sue First National.

Employees of First National indicated that they considered the lease to be terminated on October 15, 1987. However, First National's attorney sent a letter to Cianelli on December 21, 1987 stating that "[t]he Bank will shortly declare the lease in default." On January 27, 1988, First National sent a letter to Cianelli saying that the lease had been terminated and that they intended to sell the car "as is" at a public auction. The car was subsequently sold without an engine for $4,100.

On April 18, 1988, First National filed a complaint against Cianelli seeking to recover the balance due on the lease plus various expenses, less the $4,100 obtained from the sale. Cianelli filed a counterclaim against First National seeking to recover damages for "wrongful repossession."

Following a bench trial, the trial court entered judgment in favor of First National on its complaint and on Cianelli's counterclaim. The court issued findings of fact and conclusions of law as follows:

"On October 15, 1987, the defendant was in monetary and non-monetary default under [the] lease; on that date plaintiff terminated the lease.

"Upon default and termination of the lease, and in accord with the terms thereof, plaintiff took possession of the leased vehicle and disposed of it pursuant to the provisions of the lease.

"Plaintiff's disposition of the leased vehicle was carried out in a commercially reasonable manner.

"Plaintiff has been damaged in the amount of $8,954.73, with interest from January 27, 1988.

"Defendant did not reinstate or 'cure' the lease; defendant had no right under the lease so to do. Plaintiff did not waive its rights to enforce the lease.

"Defendant has failed to establish any right to damages resulting from plaintiff's repossession of the leased vehicle or termination of the lease."

Cianelli presents eight assignments of error for review. In his first assignment of error, he states that the trial court erred in "finding that he did not reinstate or cure the lease, he had no right to do so, and [First National] did not waive its rights to enforce the lease." Cianelli argues that when First National accepted the September 5, 1987 payment which was over thirty days late, the default was "cured," the lease was reinstated and First National no longer had any right to keep the seized vehicle. We find this assignment of error is not well taken.

The interpretation of a written agreement is a matter of law for the court. If a contract is clear and unambiguous, the court must give effect to the agreement's express terms and it need not go beyond the plain language of the agreement to determine the parties' rights and obligations. *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 271, 549 N.E.2d 1210, 1215.

Paragraph 20 of the lease, entitled "default and remedies," provides:

"If any information in my [Cianelli's] credit application or that of a guarantor of the lease is false or misleading or if I fail either to make a monthly rent payment within **30** days of when due or otherwise fail to keep my promises under this lease or if I or a guarantor becomes insolvent or dies, you can treat this lease as being in default; and

"a. take any reasonable measures designed either to correct the default or to save yourself from loss;

"b. terminate the lease and my rights to possess and use the vehicle and take possession of the vehicle by any method or manner permitted by law;

"c. determine my termination liability on an early termination basis which I agree to pay immediately;

"d. recover from me interest at a rate of **18%** per annum or at such lesser rate as may be set under applicable law on all expenses incurred by you and on all obligations which I owe after termination;

"e. apply my security deposit to any amounts I owe; and

"f. pursue any other remedy open to a secured creditor under Ohio law.

"I also agree to be liable for all collection, repossession, storage and legal costs, including reasonable attorneys' fees and court costs, to the extent permitted by law. All of your rights are cumulative, not alternative, and may be enforced successively or concurrently. I authorize you to enter peaceably upon any premises where the vehicle may be kept in order to take possession of the vehicle."

Additionally, paragraph 23(a) provides:

"Your waiver or delay in requiring me to keep my promises or in enforcing your rights will not affect your ability to require me to keep my promises or to enforce your rights afterwards."

We find these provisions are clear and unambiguous. When Cianelli failed to make the September 5 payment, failed to allow First National to inspect the vehicle, and failed to keep the vehicle free from liens, he was in default under the express terms of the lease. Nothing in the lease gave Cianelli the right to "cure" a default. To the contrary, under the express provisions of paragraph

23(a), First National's acceptance of the late payment did not constitute a waiver of its right to enforce the lease.

We are unpersuaded by Cianelli's claim that First National induced him to "correct" the default when its employees asked him to make the overdue September and October payments and that First National was therefore estopped from seizing the vehicle. First, this argument ignores Cianelli's failure to follow other provisions of the lease besides his failure to make payments. Second, it ignores the express language of the lease. Paragraph 20 gives First National the right to "take any reasonable measures designed * * * to correct the default." Paragraph 20 also provides that First National's rights are cumulative and may be enforced successively or alternatively.

We find no authority that would lead us to a contrary conclusion. Cianelli relies upon *Frank Nero Auto Lease v. Townsend* (1979), 64 Ohio App.2d 65, 18 O.O.3d 44, 411 N.E.2d 507, which he claims supports the proposition that First National could not repossess the vehicle *and* demand that he continue to make payments under the lease. However, in that case, the default provision in the lease agreement permitted the lessor to accelerate the entire amount of rent due under the lease and repossess the vehicle. The lease did not contain a provision requiring the lessor to resell or relet the chattel to mitigate the lessee's obligation. Therefore, the lease allowed the lessor to receive a double payment for the leased motor vehicle. The court stated:

" * * * this court holds that where a motor vehicle is repossessed by a lessor, the obligation to pay unaccrued rent is terminated. However, where the parties agree to a provision which calls for acceleration of all rents and repossession upon default, such provision will be enforced *where it requires the lessor to either resell or relet the motor vehicle in mitigation of the lessee's deficiency.* Absent a damage provision that bears a reasonable relationship to the actual damages incurred by the lessor, provisions that call for repossession plus acceleration of all unaccrued rents under the lease will not be enforced." (Emphasis added.) *Id.* at 71, 18 O.O.3d at 48, 411 N.E.2d at 512.

In the present case, although there was no express provision in the lease, First National sold the car and credited Cianelli with the net proceeds of the sale. Therefore, it could still recover all payments due under the lease even though it had repossessed the car. The total rent due under the lease less the sale proceeds represented actual damages, not a penalty or a double recovery. *Master Lease of Ohio, Inc. v. Andrews* (1984), 20 Ohio App.3d 217, 220, 20 OBR 264, 266, 485 N.E.2d 820, 823.

In sum, we find that the trial court was correct in holding that Cianelli did not "cure" the default by making the overdue payments and that First

National did not waive its rights to enforce the lease. Accordingly, Cianelli's first assignment of error is overruled.

In his second assignment of error, Cianelli states that the trial court erred in "failing to find that [First National] allowed a correction of any lease default * * * and that failure to return the auto after correction was a breach of contract and unlawful seizure." Cianelli argues that First National's failure to return the car once he had brought the lease current by paying the September 5 and October 5 payments was a breach of the lease by First National. We find this assignment of error is not well taken.

■ This assignment of error is essentially a restatement of the argument we rejected in the first assignment of error. However, Cianelli also argues that there was no evidence to support the conclusion that he was in default for any other reason than non-payment of rent. In other words, Cianelli claims there was no evidence to support First National's contention that there was a "non-monetary default." We find that there was competent credible evidence to support the conclusion that Cianelli had failed to disclose the location of the vehicle so that it could be inspected and that he failed to keep it free from liens in violation of the terms of the lease. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Accordingly, Cianelli's second assignment of error is overruled.

In his third assignment of error, Cianelli states that the trial court erred in "finding that upon default and termination, [First National] took possession of the vehicle and disposed of it pursuant to the lease." Cianelli argues that First National did not comply with the conditions precedent to seizure set forth in the lease. We find this assignment of error is not well taken.

Cianelli argues that paragraph 20 of the lease contemplates a four-step process that First National was required to follow if it wished to repossess the car: (1) a "failure of performance" by the lessee; (2) the bank elects to "treat" the lease as being in default; (3) the bank terminates the lease; and (4) it seizes the vehicle. Essentially, Cianelli claims that First National was required to make an active decision to "treat" the lease as being in default. Therefore, he argues, the inference arises that First National was required to give him notice that it intended to "treat" the lease as being in default prior to seizing the vehicle.

We find this argument to be a strained and erroneous interpretation of the lease. It requires us to read words into an unambiguous lease that are not there. It also requires us to infer a provision from the lease that is not present. The lease contains no provision requiring First National to give the lessee notice that he is in default.

Cianelli places much reliance on the letter sent by First National's attorney dated December 21, 1987, which stated "the Bank will shortly declare the lease in default." Nevertheless, there was evidence before the trial court to show that First National considered default to be automatic and that First National "treated" the lease as being in default as soon as the September 5 payment was thirty days overdue. Additionally, we fail to see how Cianelli was prejudiced by any lack of notice, as he was well aware he was violating the terms of the lease. Accordingly, Cianelli's third assignment of error is overruled.

In his fourth assignment of error, Cianelli states the trial court erred in overruling his motion for directed verdict. Cianelli argues that First National failed to satisfy the conditions precedent to termination of the lease and seizure of the leased vehicle. He also argues that because his payments had been thirty days past due prior to September 1987 and the car had not been repossessed at that time, First National was estopped from repossessing the vehicle. In his fifth assignment of error, Cianelli argues that the trial court erred in failing to find that First National was estopped from repossessing the vehicle because it failed to notify him that the car would be repossessed. Both of these assignments of error are not well taken.

■ We first note that where a case is tried before a judge, not a jury, a motion for a directed verdict pursuant to Civ.R. 50(A) is improper. Rather, the motion for a directed verdict is deemed to be a motion for an involuntary dismissal pursuant to Civ.R. 41(B)(2). *Natl. City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 55, 2 OBR 57, 61–62, 440 N.E.2d 590, 596–597; *Baumgardner v. Sipple* (Jan. 31, 1986), Clermont App. No. CA85–05–031, unreported, at 5, 1986 WL 1392. Accordingly, the trial court was not required to construe the evidence in a manner most favorable to the non-moving party; instead, it was entitled to weigh the evidence presented and determine whether the plaintiff has proved its case by a preponderance of the evidence. *Altimari v. Campbell* (1978), 56 Ohio App.2d 253, 256, 10 O.O.3d 268, 270, 382 N.E.2d 1187, 1190; *Liberty Mut. Ins. Co. v. Stewart* (Dec. 16, 1985), Warren App. No. CA85–06–038, unreported, at 4, 1985 WL 4428. A trial court's decision whether to grant an involuntary dismissal will not be set aside unless it is erroneous as a matter of law or against the manifest weight of the evidence. *Janell, Inc. v. Woods* (1980), 70 Ohio App.2d 216, 217, 24 O.O.3d 266, 266–267, 435 N.E.2d 1138, 1139–1140. The moving party is not prejudiced if the trial court erroneously applies the Civ.R. 50(A) standard for a directed verdict because it is much more rigorous than the standard for a dismissal under Civ.R. 41(B)(2). Satisfaction of the Civ.R. 50(A) standard implies satisfaction

of the Civ.R. 41(B)(2) standard. *Lentino v. Fringe Employee Plans, Inc.* (C.A.3, 1979), 611 F.2d 474, 476, fn. 1.

We turn now to the merits of these assignments of error. For the most part, they involve a restatement of arguments we have already rejected. Consequently, we need not readdress them.

In making his estoppel argument, Cianelli relies on this court's decision in *Slusser v. Wyrick* (1986), 28 Ohio App.3d 96, 28 OBR 139, 502 N.E.2d 259. In that case, the plaintiffs purchased a vehicle from an auto dealer pursuant to a retail installment security agreement. The auto dealer frequently accepted late payments. The plaintiffs testified that employees of the dealer never requested that the payments be made exactly the day they were due, never threatened them with a late charge for delinquent payments, never notified them that the dealer was calling the entire debt due immediately under the terms of the contract, and never notified them that they intended to repossess the vehicle. Subsequently, the plaintiffs made a late payment and the auto dealer repossessed the vehicle. The plaintiffs sued for wrongful repossession and the trial court found in their favor.

The auto dealer appealed, arguing that the trial court's decision was against the manifest weight of the evidence. We affirmed the trial court's decision. In so doing, we followed cases in other jurisdictions which held that acceptance of late payments by a creditor who has the statutory or contractual right to repossess the collateral estops the creditor from lawfully repossessing the collateral without notice after a subsequent late payment default. This is so because the creditor, by accepting the late payments, induces the debtor to believe that late payments are acceptable. *Id.*, 28 Ohio App.3d at 97, 28 OBR at 139–140, 502 N.E.2d at 259–260. We concluded that there was competent, credible evidence to support the trial court's factual finding and that the dealer failed to notify the plaintiffs of his intention to repossess the vehicle after accepting late payments.

We find *Slusser* to be distinguishable from the present case. In this case, the lease contained the non-waiver provision in paragraph 23(a) indicating that First National's acceptance of a late payment did not constitute a waiver of its rights under the lease agreement. See *K.B. Oil Co. v. Ford Motor Credit Co., Inc.* (C.A.6, 1987), 811 F.2d 310, 312–313. Further, First National did not accept late payments without uttering a word, as did the creditor in *Slusser*. First National's employees testified that when a payment was late they called Cianelli and sent letters telling him that they expected him to live up to his obligations under the lease. Therefore, Cianelli could not justifiably conclude that late payments were acceptable. In sum, there was competent credible evidence from which the trial court could conclude that First National's

actions did not induce Cianelli to assume that late payments were acceptable and therefore it was not estopped from repossessing the car without notice. See *C.E. Morris Co., supra.* Accordingly, Cianelli's fourth and fifth assignments of error are overruled.

In his sixth assignment of error, Cianelli argues that the trial court erred in not finding for him on his counterclaim because First National wrongfully repossessed the vehicle. This assignment of error is a restatement of the arguments we rejected in his previous assignments of error. The trial court did not err in concluding that First National was within its rights to repossess the car. Accordingly, Cianelli's sixth assignment of error is overruled.

In his seventh assignment of error, Cianelli states that the trial court erred in determining the damages awarded to First National. Cianelli argues that the trial court incorrectly interpreted the damage provisions of the lease and that the damages included various items for which he was charged twice. We find this assignment of error is not well taken.

First National introduced into evidence exhibit 14, a summary of its damages. These damages were calculated by taking the accelerated rent due plus expenses for repossessing and selling the car less the sale proceeds and Cianelli's security deposit. This method was made in accordance with the lease provisions and with case law. See *Master Lease, supra,* 20 Ohio App.3d at 220, 20 OBR at 266, 485 N.E.2d at 823. Further, Cianelli did not object to First National's exhibit. He did not contend that the damages were calculated incorrectly; nor did he present any contrary evidence. It is well settled that errors which are not brought to the attention of the trial court through objection or otherwise are waived and may not be raised on appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630–631. Accordingly, Cianelli's seventh assignment of error is overruled.

In his eighth assignment of error, Cianelli argues that the trial court erred in finding that the disposition of the car was commercially reasonable because it was sold without an engine and transmission. We find this assignment of error not well taken.

In this case, paragraph 20(a) grants First National the right to "pursue any remedy open to a secured creditor under Ohio law." The right of a secured party to dispose of collateral after a debtor's default is codified in R.C. 1309.47 (UCC 9–504). R.C. 1309.47(C) states that "[s]ale or other disposition may be [made] * * * at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable."

■ In discussing commercial reasonableness, R.C. 1309.50(B) (UCC 9–507) states:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner."

Price alone is not determinative of "commercial reasonableness" in the sale of collateral after a debtor's default. Every aspect of the disposition must be reviewed. *Huntington Natl. Bank v. Elkins* (1990), 53 Ohio St.3d 79, 559 N.E.2d 456, syllabus; *Frayer Seed, Inc. v. Century 21 Fertilizer & Farm Chemicals, Inc.* (1988), 51 Ohio App.3d 158, 162–163, 555 N.E.2d 654, 659–660. The focus is not on the proceeds but on the procedure used. *Elkins, supra,* 53 Ohio St.3d at 81, 559 N.E.2d at 458–459.

We find that there was competent credible evidence to support the trial court's ruling that the sale was commercially reasonable. The car was sold at a public auction "as is" to the highest bidder, certainly a common commercial practice. See *Elkins, op. cit.* There was evidence showing that First National acted in good faith in accordance with the terms of the lease and that it actually sought to avoid loss. See *K.B. Oil Co., supra,* 811 F.2d at 314. Accordingly, Cianelli's eighth assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., KOEHLER and WILLIAM W. YOUNG, JJ., concur.