**Frederick D. LEWIS, Plaintiff and Counterdefendant,**

v.

**NATIONAL CITY BANK, Defendant and Counterplaintiff.**

No. 91 C 0979.

United States District Court, N.D. Illinois, E.D.

Jan. 5, 1993.

James Merle Childs, Jr., Childs, Myers & Willis, Chicago, IL, for plaintiff and counter-defendant.

Richard J. O'Brien, Robert H. Rhode, Sidley & Austin, Chicago, IL, for defendant and counterplaintiff.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff, Frederick D. Lewis ("Lewis"), filed this action against defendant, National City Bank ("National City"), for damages resulting from the defendant's alleged wrongful repossession of plaintiff's boat. Jurisdiction is based on diversity of citizenship as plaintiff and defendant are citizens of different states. Currently before the Court is National City's motion for summary judgment on Lewis' claim and on its counterclaim and Lewis' cross motion for summary judgment on his claim pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant National City's motion for summary judgment is granted and plaintiff Lewis' cross motion for summary judgment is denied.

### I. FACTS

On December 21, 1985 Lewis purchased a new Chris Craft 381 Catalina boat ("the Boat") from Exit 9 Marine, Inc. in Ohio. To finance the purchase of the Boat, Lewis entered into a Note and Security Agreement with National City in the amount of $117,-500.00 and pledged the Boat as collateral to secure repayment. (Defendant's Reply to Plaintiff's Statement of Material Fact.) Pursuant to the terms of the Note and Security Agreement, Lewis was to repay National City the principal amount of $117,500.00 plus interest to be calculated at a variable rate, payable in 180 monthly installments, beginning on January 20, 1986 and due on the 20th day of each month thereafter. (Plaintiff's Statement of Material Fact). The agreement provided that if Lewis failed to make an installment payment on time he would be considered in default. (Note and Security Agreement, ¶ 11(1).) Upon default, National City then had the right to require the immediate payment of the whole amount outstanding and could pursue any rights and remedies under the law. (*Id.* at ¶ 11(7)). Additionally, the agreement contained a non-waiver provision whereby National City could

delay enforcing any of its rights under the security agreement by the acceptance of late or partial payments without losing any of its rights. (*Id.* at ¶ 13(v)).

The parties do not dispute that Lewis failed to remit his first installment payment on time and regularly thereafter failed to make his payments on time as required by the terms of the Note and Security Agreement. (Plaintiff's Statement of Material Fact, pp. 2–4, and Exhibit B). Lewis' account history demonstrates this pattern of late payments by Lewis which were accepted by National City, but for which National City assessed late charges. (Plaintiff's Statement of Material Fact, Exhibit B). The parties further do not dispute that on or about October 16, 1987 National City repossessed the Boat due to late payments by Lewis for July through October, 1987. Lewis, however, was allowed to regain possession of the Boat by paying all past-due installment payments and repossession charges. (Plaintiff's Statement of Material Fact, par. 7, Exhibits B, C, and D).

Lewis' account history also shows that on November 10, 1989 National City advised Lewis that it was accelerating his loan under the Note and Security Agreement and demanded that Lewis immediately pay the entire balance due within 10 days. At that time, Lewis had failed to tender the September and October 1989 installments but had paid an extension fee for the August 1989 payment. Despite this acceleration letter the Bank accepted the installment payments which were due rather than requiring payment of the debt in full. (Plaintiff's Statement of Material Fact, ¶ 9, Exhibits B, E, and F). The check remitting payment for September and October was initially dishonored but was ultimately redeemed by National City on or about November 29, 1989. (*Id.,* Exhibit F). After this date, Lewis again made several late payments in or around April 1990 which were accepted by National City and for which National City assessed late charges. (Plaintiff's Exhibit B).

On July 1, 1990 National City wrote Lewis regarding his overdue payment for June 20, 1990. This letter informed Lewis that he was to "remit payment by return mail and/or telephone to resolve this matter." (Plaintiff's Statement of Material Fact, Exhibit G). In response, Lewis stated that he did not expect to have the June 20th payment before July 16, 1990, but that if he did he would send it in. (Plaintiff's Statement of Material Fact, Exhibit H). As of July 16, 1990 Lewis had failed to pay the June monthly installment. Therefore, on that date National City wrote Lewis a letter stating that it was accelerating Lewis' debt and demanding payment of the entire balance within ten days or it would taken any action "deem[ed] necessary to protect its interests." (Plaintiff's Statement of Material Fact, Exhibit I).

In response to the July 16, 1990 notice of acceleration, Lewis did not pay the accelerated amount of the debt but rather tendered a check dated August 2, 1990, for $2,901.42. National City initially negotiated this check but later attempted to return the money to Lewis via a check of their own. (Plaintiff's Statement of Material Fact, Exhibits R, S, and T). Subsequently, Lewis' attorney, Ariel Weisberg, returned this check back to National City, (Exhibit S—letter dated August 13, 1990), stating that National City had waived its rights under default by accepting and negotiating this check. National City responded that it rejected this argument and restated that the account had been accelerated and that partial payment of the amount due did not cure the default. (Plaintiff's Statement of Material Fact, Exhibit S—letter dated August 16, 1990). National City also negotiated a check for $1,450.71 on August 20, 1990 for the amount due on that date. (Plaintiff's Statement of Material Fact, Exhibit U).

After all this, and because of Lewis' failure to pay the accelerated debt, National City transferred title of the Boat from Lewis to National City on August 21, 1990. (Defendant's Statement of Material Fact, Mortenson Aff., ¶ 11.) National City then repossessed the Boat on August 31, 1990 (Defendant's Statement of Material Fact, Mortenson Aff. ¶ 12), and notified Lewis by letter dated August 31, 1990 that it would sell the Boat at a public auction to be held on September 20, 1990. (Defendant's Statement of Material Fact, Mortenson Aff. ¶ 13). On that

date, National City did sell the Boat to the highest bidder for $69,500 and applied the proceeds from the sale of the Boat, minus the repossession expenses, against the principal amount due under the Note and Security Agreement. After reducing the amount due with the sale proceeds, principal of $51,883.89 plus interest remained. By letter dated October 18, 1990, National City demanded that Lewis pay this balance. Lewis has not paid National City any monies under this request. (Defendant's Statement of Material Fact, Mortenson Aff. ¶¶ 14–17).

## II. DISCUSSION

### A. *Standard of Review*

Under Rule 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989). A genuine issue of material fact exists only where there is sufficient evidence favoring the non-moving party to support a jury verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All reasonable factual inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989). If the evidence presented by the non-movant is merely colorable or is not sufficiently probative, summary judgment is appropriate. *Wolf v. Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). Here, no material facts are disputed and summary judgment for the defendant is appropriate for the reasons set forth below.

### B. *Lewis' Conversion Claim*

■ Lewis claims that National City is liable for damages resulting from the conver-sion of his Boat in that National City was not entitled to repossess Lewis' boat when it did so on or about August 31, 1990. While it was agreed to in the Note and Security Agreement that Ohio law would govern the terms therein, (Note and Security Agreement, ¶ 13(iv)), the alleged conversion action is a separate and distinct tort action which occurred in Illinois. Therefore, Illinois law will apply to the acts which allegedly resulted in conversion of Plaintiff's boat, while Ohio law will apply to the terms of the Note and Security Agreement.

■ To prove a claim for conversion under Illinois law, it is necessary for the plaintiff to show: (1) a right in the property; · (2) an absolute and unconditional right to the immediate possession of the property; (3) a deprivation of the right by the unauthorized and wrongful assumption of control, dominion, or ownership by a defendant; and (4) a demand for possession of the property. *Pavilon v. Kaferly*, 204 Ill.App.3d 235, 247, 149 Ill.Dec. 549, 557, 561 N.E.2d 1245, 1253 (1st Dist. 1990). Lewis has not met this requirement.

■ Lewis' claim for damages due to conversion of his property must fail because he had no absolute and unconditional right to his property once he was in default and failed to pay the accelerated debt as demanded of him. As was stated above, the Note and Security Agreement provided that if an installment was not paid on time, Lewis would be in default. (Note and Security Agreement, ¶ 11(1)). This same provision stated that if a party was in default, the Bank could require immediate payment of the whole amount outstanding under the Agreement and that the net proceeds of the sale of the property could be applied to the amount then owed the Bank and that the debtor must then pay to the Bank any remaining balance owed under the Agreement. (Note and Security Agreement, ¶ 11(7)). Additionally, the Note and Security Agreement provided that the Bank could delay enforcing any of its rights under the agreement by acceptance of partial payments or otherwise without losing any of its rights. (Note and Security Agreement, ¶ 13(v)).

With these contract provisions in mind, if a contract is clear and unambiguous, the court does not need to go beyond the plain language of the contract to determine the parties rights and obligations—rather the court must give effect to the express terms of the agreement. *Uebelacker v. Cincom Systems, Inc.*, 48 Ohio App.3d 268, 271, 549 N.E.2d 1210, 1215 (1988). In the instant case, the Note and Security Agreement unequivocally stated that Lewis would be considered to be in default if he was late in making any installment payments and that the Bank would not waive any of its rights upon default by the acceptance of late or partial payments. Hence, there is no need for the court to go beyond the plain language of this contract to give effect to the rights and obligations of the parties; they are clearly set forth in the Note and Security Agreement.

█ In rebuttal, Lewis argues that National City's repeated acceptance of late payments, and its acceptance of partial payment upon acceleration of Lewis' debt, constituted a waiver of National City's rights despite the non-waiver provision in the Note and Security Agreement. Lewis relies on *Slusser v. Wyrick*, 28 Ohio App.3d 96, 28 OBR 139, 502 N.E.2d 259 (1986), to support his position. In *Slusser*, a wrongful repossession action, the court found that the defendant had waived his right to repossession by regularly accepting late payments. The court stated that the acceptance of late payments by a creditor who had the statutory or contractual right to otherwise repossess the collateral estopped the creditor from repossessing such property without notice after subsequent late payment default. *Slusser*, 28 Ohio App.3d at 97, 28 OBR at 139–40, 502 N.E.2d at 260. However, *Slusser* is distinguishable from the case at bar. First, *Slusser* did not involve a party's rights under a contract that contained a non-waiver provision. Secondly, the creditor in *Slusser* never assessed late charges for the late payments as National City did, acknowledging that the payments were late under the contract. Lastly, the creditor in *Slusser* never notified the debtor in any way that the entire outstanding debt was due and at no time prior to the repossession did the creditor notify the debtor that the property was going to be repossessed. *Slusser*, 28

Ohio App.3d at 97, 28 OBR at 139–40, 502 N.E.2d at 260. In the instant case, the Note and Security Agreement contained a very plain non-waiver provision stipulating that National City would not be waiving its rights by acceptance of late or partial payments. Additionally, National City assessed late charges for late payments, (Plaintiff's Statement of Material Fact, Exhibit B), and also notified Lewis that the debt was being accelerated and thus due in full. (Plaintiff's Statement of Material Fact, Exhibit I). Therefore, the holding in *Slusser* is not applicable to the case at bar.

Furthermore, the weight of Ohio case law supports National City's contention that acceptance of late and/or partial payments after the debt has been accelerated does not constitute a waiver of its rights under the Note and Security Agreement. For instance, in *K.B. Oil Co. v. Ford Motor Credit Co.*, 811 F.2d 310 (6th Cir.1987), the court, applying Ohio law, found the contract language perfectly clear stating that acceptance of late payments neither excused default on the debtor's part nor waived the creditor's rights of acceleration and repossession. In *K.B. Oil*, the debtor argued that the creditor's conduct of accepting late payments led the debtor to believe that late installment payments could be made without fear of repossession. However, the court found that the non-waiver provision in *K.B. Oil* clearly stated that the creditor could accept late payments without waiving its rights to accelerate the debt and to repossess the vehicles. *K.B. Oil*, 811 F.2d at 313. Hence, the court upheld the non-waiver provision and held that the creditor did not waive its rights under the contract.

Furthermore, the *K.B. Oil* court distinguished *Slusser* on the basis that in *Slusser* there were indications that the property was being repossessed and then sold to a third party who resold the property back to the creditor for a future sale. And while the court in *K.B. Oil* seemed to indicate that extra protection should be afforded to individual, inexperienced consumers, such was not the situation in *K.B. Oil*, nor is it the situation in the case at bar. Hence, neither of the above scenarios is present here.

There is no allegation that National City employed a strawman purchaser. Secondly, Mr. Lewis was not an inexperienced consumer. Mr. Lewis presently runs and owns two businesses, one of which is engaged in loan packaging, obtaining financing, bonding and commercial insurance. Additionally, his past business experience includes the ownership of a credit service company which engaged in mortgaging, consumer credit packaging, and credit repair. (Defendant's Response to Plaintiff's Cross–Motion For Summary Judgment). Furthermore, Mr. Lewis holds a law degree. (Defendant's Response to Plaintiff's Cross Motion.) This is not a situation where an inexperienced debtor was being taken advantage of by a more knowledgeable, sophisticated commercial enterprise, thus further illustrating that *Slusser* does not apply.

Additional support for National City is found in *Bank One v. Bixler*, No. 1567, 1982 WL 2962 (Ohio App.1982). In *Bank One*, the creditor, a bank, accelerated the amount due under a promissory note because the defendants were two months behind in installment payments. Negotiations between the bank and the defendants resulted in the bank deciding to not accept late payments and to not waive its right to acceleration. Four days after the bank gave the defendants notice of acceleration, the defendants went to the bank and paid off the delinquent installments plus a 4% late charge for each late installment. These installment payments and late charges were accepted by the bank and were not returned or retendered to the defendants. *Bank One* at *1. These late charges, however, were not credited to the amount due under the note, and the installment payments were only credited to the amount due upon the filing of foreclosure. *Bank One* at *2. The bank then accelerated the loan.

Against this factual background, the defendants argued that a bank may not charge late fees while exercising discretionary acceptance of late payments and late charges on the one hand, and continue to treat the loan as delinquent, along with accelerating the entire balance, on the other. *Bank One* at *1. The *Bank One* court rejected this argument and found that the debtor did not prove waiver by the creditor due to the acceptance of these past due installments after the debtor had received notice of acceleration, because the bank had rejected the defendant's offer of partial payment. *Bank One* at *2.

An analogous situation occurred here. National City initially accepted Lewis' partial payment of $2,901.42, but eventually rejected it and attempted to return it to Lewis. Furthermore, when Lewis' attorney returned the check to National City, alleging that National City had waived the default by originally accepting the check, National City responded that partial payment of the amount due was not acceptable and did not cure the default. National City thus gave Lewis notice that he was still in default and that National City had not waived any of its rights. Additionally, National City had a non-waiver provision which protected its rights, whereas the creditors in *Bank One* had no such provision and were still found to have not waived their rights.

To distinguish *Bank One* from the case at bar, Lewis relies on the fact that the creditor in *Bank One* did not credit the late payments to the amount outstanding. However, the *Bank One* court did not state that if a creditor applied late payments to the amount due, that creditor waived its rights. Rather, the court merely pointed out that the creditor's action of not applying the payment to the amount outstanding was further evidence of the creditor's position that the loan was in default. Hence, National City did not waive its rights upon Lewis' default by accepting partial payment after notice of acceleration of the debt and crediting such payment to the amount outstanding.

This reasoning was reiterated in *First National Bank v. Cianelli*, 73 Ohio App.3d 781, 598 N.E.2d 789 (1991), where the court found the non-waiver provision of a security agreement to be unambiguous and fully enforceable. In *Cianelli*, the defendant had entered into a vehicle lease agreement with plaintiff for a 1985 Buick sedan. Under the terms of the agreement, defendant was required to pay $260 on the fifth day of each month. The lease also provided that if the defendant was more than thirty days late with a payment, plaintiff could treat the lease as being

in default. Additionally, the lease contained a non-waiver provision which provided that any delay on the plaintiff creditor's behalf in enforcing its rights would have no effect on the creditor's ability to later enforce those rights. *Cianelli,* 73 Ohio App.3d at 785, 598 N.E.2d at 791.

The defendant made several late payments which were more than 30 days late, and was late with two payments, one due on September 5, 1987 and the other due on October 5, 1987, when the plaintiff repossessed the defendant's vehicle on October 15, 1987. The defendant was also in non-monetary default in that he had failed to allow the creditors to make inspections of the vehicle and had allowed liens to attach to the vehicle. *Cianelli,* 73 Ohio App.3d at 783, 598 N.E.2d at 790–791. On the same day that the defendant's car was repossessed, the plaintiff received the September payment. Plaintiff then received the October payment the next day. *Cianelli,* 73 Ohio App.3d at 783, 598 N.E.2d at 791.

The defendant argued that he "cured" his default when the plaintiff accepted the late September 5, 1987 payment, and therefore the plaintiff no longer had any right to keep the defendant's seized vehicle. *Cianelli,* 73 Ohio App.3d at 783, 598 N.E.2d at 791. However, the *Cianelli* court found the defendant to be in default under his agreement and that he did not "cure" his default by eventually paying the late payment amount. The court found that based on the clear and unambiguous terms of the contract, the bank's acceptance of the late payment did not constitute a waiver of its rights under the lease. Nothing in the lease gave the defendant the right to "cure" a default, and according to the express terms of the lease, the creditor's acceptance of late payments did not waive its right to enforce the lease. *Cianelli,* 73 Ohio App.3d at 786, 598 N.E.2d at 792.

Lastly, Lewis also argues that because National City allowed Lewis to become current on his debt during a prior repossession of the Boat and a prior acceleration of the loan, such conduct also results in a waiver of National City's rights upon default. Again, the Court looks to the express provisions of the Note and Security Agreement which states that the "[b]ank may delay enforcing any of its rights on this Agreement or any security by acceptance of late or partial payments or otherwise without losing any of its rights." (Note and Security Agreement, ¶ 13(v)). If anything, this past course of conduct illustrates that National City intended to enforce its rights under the Agreement and did not approve of Lewis' habit of late payments.

Therefore, in light of the above case law and the unambiguous provisions in the Note and Security Agreement, we find that Lewis could not have reasonably relied on National City's acceptance of late and partial payments as a waiver of the Bank's rights under default. Lewis, furthermore, has not raised a material issue of fact for trial. Based on this, Lewis did not have any absolute and unconditional right to immediate possession of the property and his claim for conversion must fail. *Pavilon,* 204 Ill.App.3d at 247, 561 N.E.2d at 1253. Therefore, while construing all factual inferences in favor of the party opposing the motion, the Court finds that summary judgment should be granted for the defendant, National City Bank, as to Lewis' claim for wrongful repossession.

### C. *National City's Counterclaim for the Unpaid Balance of the Loan*

Similarly, as with Lewis' claim for wrongful repossession, no genuine issue of material fact exists as to defendant National City's counterclaim for the unpaid balance of the loan. National City claims that it sold the boat at a public auction in a commercially reasonable manner with proper notice to all parties for $69,500.00. National City claims that, after applying the sale proceeds, the principal amount due is $51,883.69. National City seeks this amount from plaintiff Lewis, plus interest.

Lewis does not raise any issue of material fact as to the counterclaim. Lewis does not contest that the sale was commercially reasonable, that proper notice was given, or that the balance remaining after the sale is other than that specified by National City. Lewis' only argument in opposition to the counter-

claim is that National City acted unlawfully when it repossessed the boat on August 31, 1990. As stated above, however, National City acted within its rights when it repossessed the boat. Therefore, this Court hereby enters judgment against Lewis in the amount of $51,883.69 plus interest.

### D. *The Rodi Proceeding Has No Relevance To his Summary Judgment Determination*

In the interest of completeness, the Court will address the remaining, although irrelevant, argument made by Lewis. Lewis also claims that the ruling in *Rodi v. M/V Rena,* No 90 C 4445, 1991 WL 70833 (N.D.Ill. April 24, 1991) (order granting sanctions) in some way affects the rights and liabilities of National City Bank and Lewis under the Note and Security Agreement. *Rodi* was filed on August 2, 1990 by George A. Hesik, attorney for Rodi Yachts, to enforce a maritime lien for work done on the Boat by Rodi Yachts. While Hesik's motives in bringing this action are not certain, the issues in that action in no way involved the instant parties' rights under the Note and Security Agreement. (Plaintiff's Statement of Material Fact, Exhibit O). Additionally, the subsequent contempt proceedings against Hesik concerned only Hesik's conduct in the *Rodi* action (Plaintiff's Statement of Material Fact, Exhibit W) and in no way dealt with any of the rights and liabilities between Lewis and National City arising from the Note and Security Agreement. In fact, Judge Shadur, who presided over the *Rodi* action, specifically stated that any dispute between National City and Lewis regarding any defaults on the loan to Lewis had to be brought as an independent lawsuit. (Defendant's Reply to Plaintiff's Statement of Material Fact). Therefore, the issues in *Rodi* and the related contempt proceedings in no way involved the rights or obligations of the present parties under the Note and Security Agreement which are at issue in the present action. Therefore, that case has no bearing on this motion for summary judgment.

### III. CONCLUSION

Based on Lewis' repeated history of late payments up to the time of acceleration, the clear language of the Note and Security Agreement, and the weight of Ohio case law, the Court finds that Lewis had no right to immediate possession of his property and therefore summary judgment is granted to the defendant, National City Bank and plaintiff Lewis' cross for summary judgment is denied. Furthermore, summary judgment as to defendant National City's counterclaim is granted. Plaintiff and counterdefendant Lewis is ordered to pay to defendant and counterplaintiff National City $51,883.69 plus interest and costs.