DECISION
Linda K. Pizarro, plaintiff-appellant, appeals a judgment of the Franklin County Court of Common Pleas granting a motion for summary judgment in favor of Credit Acceptance Corporation ("Credit"), defendant-appellee.
On February 20, 1998, appellant purchased a used 1996 Ford Taurus automobile from Bob McDorman Chevrolet, Inc., in Columbus, Ohio. Appellant financed $9,035.23 of the total purchase price of $9,900 through the lender, Credit. The terms of the loan agreement ("agreement") provided that appellant make thirty-six monthly payments of $345.05 commencing March 22, 1998 and payment continuing on the 22nd day of each month thereafter. The agreement between the parties provided for a ten-day grace period for receipt of payments:
 Late Charge: If any part of a payment is more than 10 days late, Buyers will have to pay a late charge of five cents for each dollar of the payment which is late or $3.00, whichever is less. Acceptance of a late payment or late charge does not excuse the Buyers' late payment or mean that Buyers can keep making payments after they are due. The Seller may also take the steps set forth below if there is any late payment.
The agreement further provided that if payment was not made within the ten-day grace period, Credit could repossess the vehicle:
 Repossession of the Property for Failure to Pay: If Buyers fail to pay any payment or if Buyers break any of the agreements in this contract (default), the Seller shall have the right in accordance with state law to enter onto land or in a building without breach of the peace and take the property in which it has a security interest (repossession). * * * The Seller may exercise this right without notice to Buyers. * * *
The agreement also provided:
 Delay in Enforcing Rights and Changes of this Contract: The Seller can delay or refrain from enforcing any of its rights under this contract without losing them. For example, the Seller can extend the time for making some payments without extending others. Any change in terms of this contract must be in writing and signed by the Seller. No oral changes are binding. * * *
All monthly payments from the commencement of the agreement until August 22, 1999 were paid within the ten-day grace period, although some were made before the 22nd of the month. As a matter of course, though not required under the agreement, when appellant was unable to make her payment by the 22nd of the month, she telephoned Credit to let them know she would be sending the payment and a Credit customer service representative would make a note on a computer log.
Appellant testified at her deposition that somewhere around September 21 or 22, 1999, she called Credit and explained to a customer service representative that she would not be able to make her September 1999 payment on time due to the death of her mother and that she would send it in two weeks. Appellant claims the customer service representative responded "no problem" or "that's fine." Credit's records do not indicate a call from appellant until September 28, at which time appellant told Credit she would make the September payment on October 8. Appellant stated she called Credit again approximately two weeks later and told their customer service department that she would make the September payment with the October payment and the customer service representative again said "no problem." Credit had no record of such call. However, Credit did have a record of a conversation with appellant on September 30, at which time appellant promised payment "101199 100899 MON 348.05."
Appellant testified that on October 21, 1999, she wrote two checks to Credit one for $348.05 (including a $3 late fee, as required under the agreement), and the other for $345.05 and that both checks cleared Credit's bank on October 27, 1999. Credit's records indicate that a representative spoke to appellant on October 22, 1999, and appellant told the representative she sent the checks that day. Credit's log indicates that within a few minutes of appellant's call on October 22, a repossession recommendation was made because the account was about to be thirty days past due. The repossession recommendation was approved on October 25, 1999.
On October 27, 1999, an employee of Abby's Towing ("Abby's") came to appellant's workplace and requested the keys to the vehicle in order to repossess it. Appellant protested and called Credit's customer service department and explained the situation, but the representative told appellant if somebody was there to repossess the vehicle she should give the person the keys, which she did. Appellant then bought another vehicle for approximately $300.
On October 29, 1999, Credit notified appellant that it had received her checks but because the vehicle was repossessed, appellant would need to pay a "quick collect" fee of $250 plus a miscellaneous fee of $11.95 before it would release the vehicle to her. On November 1, 1999, appellant paid the fees and the vehicle was released to her.
On February 9, 2000, appellant filed a complaint against Credit and Abby's. As against Credit, appellant alleged claims based upon: (1) breach of contract; (2) conversion; (3) fraud; (4) intentional infliction of emotional distress; (5) invasion of privacy; (6) breach of the peace; (7) breach of good faith; (8) deceptive and unfair trade practices; and (9) negligence. On March 17, 2000, Credit filed a motion to dismiss for failure to state a claim and failure to attach the loan agreement to the complaint. On May 31, 2000, appellant filed an amended complaint attaching the loan agreement. The trial court denied Credit's motion to dismiss for failure to state a claim on July 5, 2000.
On November 15, 2000, Credit filed a motion for summary judgment, which the trial court granted on February 12, 2001. The trial court found the parties' agreement provided for written modifications only, and that there were none. The trial court also denied appellant's claim that Credit should have been estopped from repossessing the vehicle. The court found Credit's statement that it would accept late payments insufficient because Credit never told appellant it would not take any action on late payments, and appellant failed to produce any evidence that her position before the phone call to Credit was any different than her position after the call as a result of the conversation. The court also found Credit's history of accepting late payments never extended beyond the ten-day grace period. On February 13, 2001, appellant dismissed Abby's as a party pursuant to Civ.R. 41(A)(1). Appellant appeals the judgment of the trial court, asserting the following assignment of error:
 The Trial Court erred in granting defendant-appellee's motion for summary judgment by concluding defendant-appellee is not estopped to assert that plaintiff-appellant breached the loan agreement.
Appellant argues in her sole assignment of error that the trial court erred in granting summary judgment in favor of Credit. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but, instead, must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
Appellant does not assert the agreement was modified with regard to the provisions relating to late payments, the prohibition against oral modifications, or repossession. Rather, appellant relies solely upon an equitable remedy. Appellant contends that Credit was estopped from arguing she was in breach of contract because Credit "lulled" her into a "false sense of security" that as long as she telephoned Credit about her payment being late, it would be accepted without repercussions. Equitable estoppel precludes a party from taking a contrary position, where the party, by his or her previous conduct, has induced another to change his or her position in good faith reliance upon that conduct. State ex rel. Cities Service Oil Co. v. Orteca (1980), 63 Ohio St.2d 295, 299. The obvious purpose of the doctrine is to prevent fraud and to promote the ends of justice. Ohio State Bd. of Pharmacy v. Frantz (1990),51 Ohio St.3d 143, 145. A prima facie case for equitable estoppel requires appellant to prove four elements: (1) that Credit made a factual misrepresentation; (2) that the misrepresentation was misleading; (3) that it induced actual reliance that was reasonable under the circumstances; and (4) that her reliance upon Credit's misrepresentation was detrimental. See Romine v. Ohio State Hwy. Patrol (2000),136 Ohio App.3d 650, 654.
In the present case, appellant's claim for estoppel is actually based on two distinct grounds: (1) she was "lulled" into a false sense of security by the statements of Credit's customer service representative that her late payment for September 1999 was "no problem"; and (2) she was "lulled" into a false sense of security by Credit's history of accepting late payments without repossession. With regard to the former, we find appellant did not raise a genuine issue of material fact with regard to any of the factors necessary to establish estoppel. Appellant failed to establish Credit made a factual representation that it would not enforce any of the provisions of the agreement with regard to the September 1999 payment. When appellant called Credit's customer service department on several occasions in September and October 1999, the representatives merely acknowledged appellant's promise to pay at a future date. There was no evidence she ever discussed with the representatives the right of repossession or waiver of any agreement provisions. Indeed, appellant testified there was no discussion or promise made by Credit regarding repossession. Appellant stated her only purpose for calling Credit was to inform them her payment would be late, and she did not request that they not repossess her car or waive any terms of the agreement. We also note that appellant, without any direction from Credit, added the three dollar late fee to her September 1999 payment, thereby indicating she knew Credit's alleged statement "no problem" did not constitute a blanket waiver of all late payment provisions, rights, and remedies. Accordingly, there was no factual representation made by Credit that it would not enforce the repossession provision upon which appellant could have reasonably relied.
Appellant also claims Credit had a past history of allowing her to make "late" payments without repercussions, and, thus, these past representations "lulled" her into believing that it would not enforce the agreement provisions if she made a "late" payment. However, technically, because the agreement contained a grace period, a payment was only considered "late" if it was received more than ten days beyond the due date. Appellant admitted in her deposition that her previous "late" payments prior to September 1999 had all been made within the ten-day grace period; thus, such payments were not actually "late." Appellant acknowledges that the only actual "late" payment she made was the September 1999 payment. Therefore, Credit could not have made any previous representations to appellant that it would not enforce its rights of repossession if appellant made a payment outside the ten-day grace period, given that none of appellant's previous overdue payments were ever made beyond the grace period. Thus, appellant could not have been reasonably "lulled" into a false sense of security based on any prior misleading representations.
Appellant cites Slusser v. Wyrick (1986), 28 Ohio App.3d 96, in which the court held the acceptance of late payments by a creditor who has the statutory or contractual right to repossess the collateral estops the creditor from lawfully repossessing said collateral after subsequent late payments unless the creditor gives notice to the debtor that, henceforth, strict compliance with the time for payment will be required in order to avert repossession. However, we find the current case distinguishable on three important grounds. Unlike Slusser, in the current case, the agreement contained a specific provision indicating that Credit's acceptance of late payments did not constitute a waiver of any of its rights under the agreement. See First Natl. Bank of Cincinnati v. Cianelli (1991), 73 Ohio App.3d 781 (Slusser inapplicable because the lease in Slusser did not contain a non-waiver provision indicating that the acceptance of a late payment did not constitute a waiver of other rights under the lease agreement). Further, in Slusser, there was no grace period, and the debtor's payments were regularly paid late. In the current case, as explained above, appellant's previous payments had all been made within the grace period and were never "late" until September 1999. Finally, in Slusser, the debtor was "lulled" into a false sense of security because the creditor had a history of accepting late payments without repossessing vehicles. In the current case, Credit had no history of accepting payments beyond the grace period. Therefore, we find Slusser unpersuasive. Equitable estoppel does not apply to preclude Credit from asserting that appellant breached the agreement, and it was within Credit's contractual rights although harsh, to repossess the vehicle without notice to appellant.
Appellant next argues that even if Credit had a right of repossession, it breached the peace by approaching appellant at her place of employment in violation of R.C. 1309.46, which provides that a secured party has the right to take possession of the collateral on default unless an agreement to the contrary is reached between the parties. A judicial process is not needed if the taking of possession of the collateral can be done without a breach of the peace. Both parties cite Morris v. First Natl. Bank 
Trust Co. of Ravenna (1970), 21 Ohio St.2d 25, where the Ohio Supreme Court held that when a creditor legally enters upon the private premises of a debtor for the purpose of repossessing collateral security kept thereon and is: (1) physically confronted by one in charge of such premises; (2) told to desist his efforts at repossession; and (3) instructed to depart from the premises, the refusal by the creditor to heed such commands constitutes a breach of the peace within the meaning of R.C. 1309.46, and such creditor thereafter stands as would any other person who unlawfully refuses to depart from the land of another. Id. The court further explained that breach of the peace, as that term is used in R.C. 1309.46, includes an act that is likely to produce violence, that reasonably tends to provoke or excite others to break the peace, and that is not performed under judicial process. Id.
In the present case, appellant testified in her deposition that she greeted Abby's tow truck driver as he entered her office and even identified herself when he asked her if Linda Pizarro was there. The driver said "I'm sorry," and said he was there to repossess her vehicle. He apologized again, and she asked him to "wait a minute." He showed her the repossession order, but she told him to "hold on." The driver waited while she called Credit. She testified that the customer service representative at Credit told her, in an impolite manner, that if someone was there to repossess the car, by law she must give them the keys. She said she was "shaking," and went back to the driver to ask him if she could get her personal items out of the vehicle. He said yes, and allowed her to gather her items. He apologized again and explained that it was his job. The driver then gave her his business card and told her to call Abby's when she resolved the situation. Although she described his demeanor at first to be "nasty," which is not supported by the description in her deposition, she later said that he was nice and apologized for having to repossess her vehicle. She testified that she understood it was his job. She stated that after he left, she was crying and "hysterical." Her boss told her to take a few minutes to relax, so she talked to him for about an hour before returning to work. She admitted that the incident did not affect her work, and her boss did not express any anger or irritation with regard to the incident.
We find the facts in the present case are distinguishable from those in Morris. Here, the tow truck driver for Credit's agent, Abby's, entered a building open to the public via direct access in order to locate appellant. The driver was never confronted with anyone in charge of the premises, never told to desist at efforts to repossess the vehicle, and was never instructed to depart the premises. There is also no evidence that the driver's actions were likely to produce violence or excite appellant to break the peace. Appellant did not present any evidence that the driver used constructive or actual force or tried to intimidate her, her boss, or coworkers. To the contrary, appellant merely told the driver to wait while she called Credit, which he did, and then she surrendered the vehicle without protest. By her own testimony, he was apologetic and nice and allowed her to retrieve her personal belongings. Although appellant alleges in her brief that she suffered duress and embarrassment and the driver caused "havoc" and "confusion," she presents no evidence to support such.
Therefore, even construing the evidence most strongly in favor of appellant, we find the actions of Credit and its agent did not fall within the legal confines of a breach of the peace as defined above. Appellant failed to raise a genuine issue of material fact regarding her breach of peace claim, and the trial court did not err in granting summary judgment on this issue. Appellant's assignment of error is overruled. Our disposition of this assignment of error also precludes appellant's recovery based on the remaining dependent claims in her complaint. Therefore, the trial court did not err in granting summary judgment on these causes of action, as well.
Accordingly, we find that the trial court did not err in granting Credit's motion for summary judgment. Appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
TYACK and KENNEDY, JJ., concur.