HUNTINGTON NATIONAL BANK, APPELLANT AND CROSS-APPELLEE, *v.* ELKINS, APPELLEE AND CROSS-APPELLANT.

[Cite as Huntington Natl. Bank *v.* Elkins (1990), 53 Ohio St. 3d 79.]

(No. 89-1020—Submitted May 29, 1990—Decided August 8, 1990.)

80

*Porter, Wright, Morris & Arthur, Gordon W. Johnston, George M. Hauswirth* and *Carole D. Weiss,* for appellant and cross-appellee.

*Legal Aid Society of Columbus* and *Leslie Varnado, Jr.,* for appellee and cross-appellant.

HOLMES, J. The narrow issue presented for our review is whether price alone is determinative of "commercial reasonableness." For the reasons which follow we answer this query in the negative and reverse the court of appeals.

The right of a secured party to dispose of collateral after a debtor's default is codified at R.C. 1309.47 (U.C.C. 9-504). R.C. 1309.47(C) requires that "* * * every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable." Price alone is not determinative of "commercial reasonableness" in the sale of collateral after a debtor's default. Every aspect of the disposition must be reviewed in addition to the price including the method, manner, time, place and terms. See *Ford Motor Credit Co.* v. *Potts* (1989), 47 Ohio St. 3d 97, 101, 548 N.E. 2d 223, 227. In *Ford Motor Credit Co.,* this court recently construed the term "commercially reasonable" in the context of R.C. 1309.47 in a situation involving the sale of a repossessed automobile at a public auction. In holding that such sale was commercially reasonable, we looked to the language of R.C. 1309.50(B) (U.C.C. 9-507), which provides:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner. * * *"

In the case at bar, the court of appeals held that it was commercially unreasonable for Huntington to accept a price below the vehicle's wholesale value at a public sale and reject higher private offers. However, it is our determination that whether a sale of collateral is commercially reasonable will turn upon all the facts in a particular case. Price alone is not the determinative factor.

Here, Huntington utilized a commercially recognized auction company to dispose of the vehicle. The auction company advertised the vehicle's sale for two consecutive weeks in a newspaper of general circulation and mailed 1,200 individual announcements. In addition, Huntington gave Elkins notice of the sale and otherwise complied with the procedural requirements of R.C. 1309.47(C)[1] (U.C.C. 9-504).

As was observed in *In re Zsa Zsa Limited* (S.D.N.Y. 1972), 352 F. Supp. 665, 671, affirmed without opinion (1973), 475 F. 2d 1393: "* * * [T]he primary focus of commercial reasonableness is not the *proceeds* received from the sale but rather the *procedures* employed for the sale." (Emphasis *sic*.)

However, a low resale price may reasonably trigger an inquiry into the commercial reasonableness of the sale. In the case *sub judice*, we conclude the procedures utilized by Huntington in disposing of the vehicle were commercially reasonable.

In so concluding we do not give *carte blanche* to public sales as a guarantee of commercial reasonableness. R.C. 1301.09[2] (U.C.C. 1-203) imposes an obligation of good faith on a secured party in the disposition of collateral. Good faith in this context requires the secured party to use its best efforts to maximize the price for the collateral and to have reasonable regard for the debtor's interests.

We are unpersuaded by Elkins' claim that it was commercially unreasonable for Huntington to deny her the opportunity to privately dispose of the collateral for less than the payoff amount. Given the economic realities of the lending industry, a secured creditor will generally attempt to obtain the highest possible price for the collateral since the recovery of a deficiency judgment against a defaulted debtor is usually dubious. In

---

[1] R.C. 1309.47(C) provides:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement renouncing or modifying his right to notification of sale.

In the case of consumer goods no other notification need be sent. In other cases, notification shall be sent to any other secured party from whom the secured party has received, before sending his notification to the debtor or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

[2] R.C. 1301.09 provides:

"Every contract or duty within Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code, imposes an obligation of good faith in its performance or enforcement."

addition, although Elkins testified at trial that she found willing purchasers, the record is devoid of any binding, definite offers. Illusory offers cannot support Elkins' claim of commercial unreasonableness. Accordingly, we find Huntington's own profit motive coupled with its duty to transact in good faith supports its decision to dispose of the collateral at a public sale. Having determined that the record before us supports the trial court's decision that Huntington's sale of collateral was commercially reasonable, we need not address Elkins' cross-appeal.

Accordingly, the judgment of the court of appeals is reversed and that of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

SWEENEY, J., concurs in judgment only.